# 14-239

*To Be Argued By:*
ROBERT M. SPECTOR

---

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 14-239

_____

UNITED STATES OF AMERICA,
*Appellee,*

-vs-

JAYQUIS BROCK, MARK BASKERVILLE,
RUSSELL BATTLES, STEPHANIE D'AGOSTINO,

(For continuation of Caption, See Inside Cover)
_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## PETITION FOR PANEL REHEARING

DEIRDRE M. DALY
*United States Attorney*
*District of Connecticut*

ROBERT M. SPECTOR
*Assistant United States Attorney*
SANDRA S. GLOVER
*Assistant United States Attorney (of counsel)*

SHERROD DANIELS, LARRY DEVORE, HARRY DIAZ, STEVEN DICKS, DERRON DICKERY, DEVANTE FORTUNE, MAURICE HILL, SHAMAINE HOBBY, EDMUND JACKSON, SR., JAMES JENKINS, MILTON JOHNSON, TORRENCE JONES, DEMETRIUS LITTLE, KRISTIN LONGOBARDI, ERIC LUMPKIN, WENDEL McDUFFIE, RYAN MOORE, JAVON MOORNING, GEMINI NAPOLEON, CHARLES NICHOLS, RAYMOND RICE, CHANEL SINCLAIR, ROGER SULLIVAN, ELEAZAR THOMPSON, TYLAN THOMPSON, ALVIN TOWNSEND, RONNIE WASHINGTON, TYRONE WILLIAMS, DARREN WINFREY, AARON MOORE, MANOKUS FIELDS, BRANDON TOLSON, JOSEPH JACKSON,

*Defendants,*

JAMES DICKERSON,

*Defendant-Appellant.*

# Table of Contents

Table of Authorities ............................................. ii

Preliminary Statement ....................................... 1

Statement of the Case ....................................... 2

Argument.............................................................. 4

Conclusion ....................................................... 10

Addendum

# Table of Authorities

Pursuant to "Blue Book" rule 10.7, the Government's citation of cases does not include "certiorari denied" dispositions that are more than two years old.

## Cases

*Cavazos v. Smith,*
   132 S. Ct. 2 (2011) (per curiam)......................9

*Coleman v. Johnson,*
   132 S. Ct. 2060 (2012) (per curiam)................8

*Jackson v. Virginia,*
   443 U.S. 307 (1979) .............................3, 4, 6, 7

*United States v. Autuori,*
   212 F.3d 105 (2d Cir. 2000)............................6

*United States v. Caraballo-Rodriguez,*
   726 F.3d 418 (3d Cir. 2013) (en banc). ...........7

*United States v. Cassese,*
   428 F.3d 92 (2d Cir. 2005)...............................6

*United States v. Chavez,*
   549 F.3d 119 (2d Cir. 2008)............................3

*United States v. Coplan,*
   703 F.3d 46 (2d Cir. 2012).......................2, 3, 5

*United States v. Dickerson,*
   ___ F.3d ___, 2015 WL 2191135
   (2d Cir. May 12, 2015).................................1, 2

*United States v. Espaillet,*
    380 F.3d 713 (2d Cir. 2004)............................ 6

*United States v. Glenn,*
    312 F.3d 58 (2d Cir. 2002)............................. 5

*United States v. Lopez,*
    74 F.3d 575 (5th Cir. 1996) ........................... 5

*United States v. MacPherson,*
    424 F.3d 183 (2d Cir. 2005)............................ 6

*United States v. Morgan,*
    385 F.3d 196 (2d Cir. 2004)............................ 6

*United States v. Rodriguez,*
    392 F.3d 539 (2d Cir. 2004)............................ 3

*United States v. Santos,*
    541 F.3d 63 (2d Cir. 2008)............................. 5

*United States v. Vargas-Ocampo,*
    747 F.3d 299 (5th Cir.) (en banc), *cert. denied,*
    135 S. Ct. 170 (2014). ....................................... 6

*United States v. Yannotti,*
    541 F.3d 112 (2d Cir. 2008)............................ 3

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 14-239

_____

UNITED STATES OF AMERICA,

*Appellee,*

-vs-

JAMES DICKERSON,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

### PETITION FOR PANEL REHEARING

### Preliminary Statement

The United States petitions for panel rehearing of the Court's decision in *United States v. Dickerson*, ___ F.3d ___, 2015 WL 2191135 (2d Cir. May 12, 2015) because the Court's opinion misstated the standard of review for sufficiency claims. Because the government does not believe that the misstated language had any impact on the Court's decision, the government does not ask the Court to alter the judgment but merely

respectfully requests that the Court revise the relevant language in the published opinion.

## Statement of the Case

In a published decision, this Court reversed the defendant's crack cocaine conspiracy conviction after finding that the evidence was insufficient to establish the defendant's knowing and voluntary membership in the charged conspiracy. *United States v. Dickerson*, ___ F.3d ___, 2015 WL 2191135 (2d Cir. May 12, 2015). The Court applied the buyer/seller exception to the facts of this case and concluded that the evidence merely established the defendant's role as someone who regularly purchased crack cocaine from his associates, but not as a member of the charged conspiracy. Slip op. at 6-10.

In reaching this conclusion, the Court described the standard for sufficiency claims in two separate parts of the opinion. First, at the beginning of the Discussion section, the Court stated as follows:

> As a general matter, a defendant challenging the sufficiency of the evidence bears a heavy burden, as the standard of review is exceedingly deferential." *United States v. Coplan,* 703 F.3d 46, 62 (2d Cir. 2012) (internal citations and quotation marks omitted). Specifically, we "must view the evidence in the light most favorable to the Government, crediting every in-

2

ference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (citing *United States v. Chavez,* 549 F.3d 119, 124 (2d Cir. 2008)). "Although sufficiency review is *de novo,* we will uphold the judgments of conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (citing *United States v. Yannotti,* 541 F.3d 112, 120 (2d Cir. 2008); *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

Slip op. at 6. Then, at the end of the opinion, in the final paragraph of the Discussion section, the Court included the following language:

"To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Rodriguez,* 392 F.3d 539, 544 (2d Cir. 2004). We conclude that the evidence of Dickerson's intent to join the charged conspiracy "*gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence.*" *Coplan,* 703 F.3d at 72 (internal quotation marks omit-

3

ted). *Under these circumstances, "a reasonable jury must necessarily entertain a reasonable doubt." Id.* (quotation marks omitted).

Slip op. at 10 (emphasis added). It is the last two sentences of this last quote that are the subject of this petition.

## Argument

In stating its conclusion that the evidence was insufficient to support a finding that Dickerson intended to join the charged conspiracy, this Court misstated the standard of review for sufficiency claims. In particular, the Court stated that because "the evidence of Dickerson's intent to join the charged conspiracy gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence . . . a reasonable jury must necessarily entertain a reasonable doubt." Slip op. at 10 (internal quotations and citations omitted). This language does not faithfully describe a court's task when evaluating the sufficiency of the evidence. Indeed, it runs counter to the Supreme Court's teaching in *Jackson v. Virginia* that a jury verdict must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," 443 U.S. 307, 319 (1979) (emphasis in original), which the Second Circuit has long understood to mean that "where either of the two results, a reasonable doubt or no reasonable

4

doubt, is fairly possible, the court must let the jury decide the matter," *United States* v. *Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (internal quotation marks omitted). Under that standard, it is not for the district judge (or the Court of Appeals) to marshal the evidence for and against guilt, compare the relative weight, and then decide which case is stronger or if they are in "equipoise." That is the jury's role. It is for the reviewing court to determine only whether a rational view of the evidence could establish each element of the offense of conviction.

In support of this flawed language, the Court relied on language in *United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012), approving an "equipoise rule" for evaluating sufficiency challenges by comparing the evidence in favor of guilt with that in favor of innocence. *See* slip op. at 10. But the underpinnings of that approach are unsound. Borrowed from a now-repudiated holding of the Fifth Circuit, the "equipoise rule" was first introduced into this Circuit in 2002. *See United States* v. *Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) ("[I]f the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt.'" (quoting *United States* v. *Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)). It was almost immediately identified as being in tension with estab-

5

lished Second Circuit precedent. *See United States v. Cassese*, 428 F.3d 92, 104-05 (2d Cir. 2005) (Raggi, J., dissenting) ("*Glenn* did not . . . abrogate the [earlier] holding . . . that, when 'either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, a reviewing court must let the jury decide the matter.'" (quoting *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000); citing *United States v. MacPherson*, 424 F.3d 183 (2d Cir. 2005); *United States v. Morgan*, 385 F.3d 196 (2d Cir. 2004); *United States* v. *Espaillet*, 380 F.3d 713 (2d Cir. 2004)).

After exporting the "equipoise rule" to the Second Circuit, the Fifth Circuit, sitting *en banc*, repudiated it as an unfaithful application of Supreme Court precedent. *See United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir.) (en banc) (holding that "the 'equipoise rule' is not helpful in applying the Supreme Court's standard prescribed in *Jackson* v. *Virginia*" and therefore "abandon[ing] use of the 'equipoise rule'"), *cert. denied*, 135 S. Ct. 170 (2014). Explaining its decision, the Fifth Circuit observed that it was a seemingly impossible task for "a court [to] determine[] that evidence, even when viewed most favorably to the prosecution, is 'in equipoise.'" *Id.* The Court asked, "Is it a matter of counting inferences or of determining qualitatively whether inferences equally support a theory of guilt or innocence?" *Id.* In addition to its imprecise na-

6

ture, such an inquiry, by definition, infringed upon the jury's core function of weighing the evidence. And that was not permitted under Supreme Court precedent. Under the Fifth Circuit's construction of that precedent, *Jackson*'s "deferential standard of review . . . does not permit the type of fine-grained factual parsing necessary to determine that the evidence presented to the factfinder was in equipoise." *Id.* at 301 (internal quotation marks omitted). It is telling that the very Court that originated the "equipoise rule" applied by this Court has now abandoned its reasoning.

Similarly, the Third Circuit, sitting *en banc*, has repudiated its version of the "equipoise rule," which precluded conviction in drug conspiracy cases where evidence of the defendant's knowledge of the conspiracy's object was "just as consistent" with a conspiracy involving non-drug contraband. *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431-32 (3d Cir. 2013) (en banc) ("[W]e specifically disavow the reasoning we previously embraced—that the jury's verdict could not stand when the evidence was as consistent with contraband other than controlled substances, even though a jury could rationally conclude that the defendant knew the subject of the conspiracy was drugs."). Recognizing the error in that approach, the Third Circuit explained that "[w]hile evidence proffered at trial may be consistent with multiple possibilities,

7

our role as a reviewing court is to uphold the jury verdict—and not to usurp the role of the jury—as long as it passes the 'bare rationality' test." *Id.* at 432. That test does not permit "[r]eversing the jury's conclusion simply because another inference is possible—or even equally plausible . . . ." *Id.* Instead, the Third Circuit held that "[i]t is up to the jury—not the district court judge or our Court—to examine the evidence and draw inferences. Unless the jury's conclusion is irrational, it must be upheld." *Id.*; *see also id.* ("In our role as reviewers, we must resist the urge to hypothetically insert ourselves into the jury room for deliberations."). Rationality, not evidentiary balancing, is the standard under which jury verdicts are judged.

Recent decisions of the Supreme Court confirm that the Fifth and Third Circuits were correct to abandon their "equipoise tests" and that other Circuits were well-advised to have never embraced them in the first place. In *Coleman v. Johnson*, the Supreme Court rejected a requirement that "a jury's inferences [are] permissible" only if they "flow from facts and circumstances proven in the record that are of such volume and quality as to overcome the presumption of innocence." 132 S. Ct. 2060, 2064 (2012) (per curiam) (internal quotation marks omitted). That requirement "unduly impinged on the jury's role as factfinder" by improperly cabining its "broad discretion in deciding what inferences to draw from

8

the evidence presented at trial." *Id.* Under a properly applied standard of review, only inferences that are "so insupportable as to fall below the threshold of bare rationality" may be disturbed. *Id.* at 2065. That "threshold of bare rationality" does not concern itself with the relative merits of competing inferences; it is concerned only with the existence of support for the inference drawn by the jury.

Likewise, in *Cavazos v. Smith*, the Supreme Court faulted a reviewing court for "substitut[ing] its judgment for that of a . . . jury on the question whether the prosecution's or the defense's expert witnesses more persuasively explained the cause of a death." 132 S. Ct. 2, 4 (2011) (per curiam). Weighing of the evidence in that manner ran afoul of the simple rule that a "reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* Recognizing that "rational people can sometimes disagree," the Supreme Court observed that "the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

In sum, the language quoted at the end of this Court's opinion in *Dickerson* misstated the standard for review of sufficiency claims. Because the Court stated the proper standard at

9

the beginning of the opinion, however, the government does not believe that the misstated language affected this Court's decision and therefore only asks that this Court revise the erroneous language in its opinion.

## Conclusion

For the foregoing reasons, the petition for rehearing should be granted.

Dated: May 26, 2015

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

ROBERT M. SPECTOR
ASSISTANT U.S. ATTORNEY

Sandra S. Glover
Assistant United States Attorney (of counsel)

10

**Addendum**

14-239-cr
*United States v. James Dickerson*

# In the
# United States Court of Appeals
# For the Second Circuit

_____

August Term, 2014

No. 14-239-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

JAYQUIS BROCK, MARK BASKERVILLE, RUSSELL BATTLES, STEPHANIE
D'AGOSTINO, SHERROD DANIELS, LARRY LEVORE, HARRY DIAZ, STEVEN
DICKS, DERRON DOCKERY, DEVANTE FORTUNE, MAURICE HILL,
SHAMAINE HOBBY, EDMUND JACKSON, SR., JAMES JENKINS, MILTON
JOHNSON, TORRENCE JONES, DEMETRIUS LITTLE, KRISTIN LONGOBARDI,
ERIC LUMPKIN, WENDEL MCDUFFIE, RYAN MOORE, JAVON MORNING,
GEMINI NAPOLEON, CHARLES NICHOLS, RAYMOND RICE, CHANEL
SINCLAIR, ROGER SULLIVAN, ELEAZAR THOMPSON, TYLAN THOMPSON,
ALVIN TOWNSEND, RONNIE WASHINGTON, TYRONE WILLIAMS, DARREN
WINFRY, AARON MOORE, MANOKUS FIELDS, BRANDON TOLSON, JOSEPH
JACKSON,
*Defendants,*

JAMES DICKERSON
*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the District of Connecticut.
No. 3:10-cr-227 (EBB) — Ellen Bree Burns, *Judge.*

No. 14-239-cr

————

Argued: December 17, 2014
Decided: May 12, 2015

————

Before: WINTER, JACOBS, and PARKER, *Circuit Judges*.

————

Defendant-Appellant James Dickerson appeals from a judgment of conviction in the United States District Court for the District of Connecticut (Ellen Bree Burns, *Judge*) for conspiracy to distribute and to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841 and 846, and distribution of crack cocaine, in violation of 21 U.S.C. § 841. Because we find that there was insufficient evidence on which a jury could convict Dickerson on the conspiracy count, we **REVERSE** the conviction for conspiracy and **REMAND** for resentencing on the distribution count alone.

————

JEREMIAH DONOVAN, Old Saybrook, CT, *for Defendant-Appellant James Dickerson.*

ROBERT M. SPECTOR (Marc H. Silverman, *on the brief*), Assistant United States Attorneys *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, *for Appellee.*

————

2

No. 14-239-cr

B<span>ARRINGTON</span> D. P<span>ARKER</span>, *Circuit Judge*:

In April 2012, James Dickerson was indicted along with thirty-seven other defendants and charged in two counts – conspiracy to distribute and to possess with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c). Following a four day trial, Dickerson was convicted on both counts and sentenced to 168 months, to run concurrently. On appeal, Dickerson challenges his conviction on the conspiracy, but not the substantive distribution count. As to the conspiracy conviction, we agree with Dickerson that the evidence establishes no more than his role as a mere purchaser from the conspiracy and cannot support an inference that he joined it. Consequently, we do not address his alternative argument for a new trial as to that count on the basis that a juror committed misconduct during deliberations by accessing a dictionary definition of the word "conspiracy".

The indictment targeted a drug distribution conspiracy based in the Newhallville neighborhood on the border of New Haven and Hamden, Connecticut. Joseph Jackson, the leader of the organization, employed several lieutenants, including his nephew Jayquis Brock, to distribute crack cocaine to purchasers. Brock ultimately pled guilty and testified for the prosecution pursuant to a cooperation agreement. Brock testified that he typically sold 18 "eight-balls" (each weighing approximately 3.5 grams) of crack cocaine per day at $140-150 each. Jackson allowed Brock to keep the money he earned for every ninth eight-ball he sold.

According to Brock, Dickerson was one of his regular buyers, and had been an existing customer at the time Brock joined Jackson's

3

No. 14-239-cr

organization in July 2010. Dickerson typically purchased two eight-balls at a time, on several days each week, and occasionally more than once per day. Dickerson contacted Brock by calling his "dispatch" phone, which was a cell phone issued by Jackson to Brock on which purchasers could contact Brock to set up transactions. The government obtained warrants to intercept calls on the dispatch telephone and captured numerous calls between Dickerson and Brock, as well as several calls between Dickerson and Jackson. Telephone records introduced at trial showed that Dickerson contacted Brock or Jackson 129 times between June and September 2010. Of these contacts, the government introduced 31 recorded calls, all but two of which were between Dickerson and Brock. On cross-examination, Brock testified that he did not have resale agreements with his customers and, consequently, did not know or care what they did with the drugs after he sold them. Brock further testified that he did not consider Dickerson to be a member of Jackson's drug trafficking organization, although he did consider Dickerson to be a "reliable customer."

In October 2010, Dickerson was captured on video selling an eight-ball and eight $20 baggies of crack cocaine to an undercover officer, which formed the basis for the substantive distribution count in the indictment. In November 2010, Dickerson was arrested. Shortly thereafter, he met with a law enforcement agent and his attorney, and admitted that he purchased crack cocaine from Brock and others, broke down each eight-ball, and resold it in $20 baggies.

Dickerson's defense at trial to the conspiracy count was that he was a mere buyer of drugs and not a participant in the conspiracy. At the close of the prosecution's case in chief, Dickerson moved on this ground for a judgment of acquittal as to the conspiracy count. Dickerson contended that he never joined the

4

No. 14-239-cr

conspiracy and was only one of its numerous customers, highlighting the fact that Brock himself testified that he viewed Dickerson as a customer and not a member of the organization.

The district court denied the motion, concluding that the government had adduced sufficient evidence that Dickerson was a member of the conspiracy. The district court held that, although the "transactions between Dickerson and Brock are by themselves insufficient to constitute the charged conspiracy . . . . other evidence presented at trial was sufficient to permit the jury to conclude beyond a reasonable doubt that Dickerson knew of the Jackson group's drug distribution scheme and agreed to join and participate in it." JA 111.

Specifically, the district court noted that the government had proved that Dickerson purchased and resold drugs in wholesale quantities on a regular basis over a period of at least a month from Brock and that Dickerson's post-arrest statements indicated that he knew Brock worked for Jackson and that the two were moving large quantities of drugs on a daily basis. These facts, according to the district court, permitted the jury to conclude that "Dickerson had not merely engaged in spot transactions with Brock" but that the two had developed an expectation of future sales such that "each side had an interest in the other's future drug-related endeavors – *i.e.,* Dickerson's interest in the continued supply of [crack] by Brock, and Brock's interest in Dickerson's continued demand for them." JA 113. This appeal followed.

5

No. 14-239-cr

### DISCUSSION

"As a general matter, a defendant challenging the sufficiency of the evidence bears a heavy burden, as the standard of review is exceedingly deferential." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal citations and quotation marks omitted). Specifically, we "must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (citing *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008)). "Although sufficiency review is *de novo*, we will uphold the judgments of conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (citing *United States v. Yannotti*, 541 F.3d 112, 120 (2d Cir. 2008); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Our precedent is clear that the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics. *See United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009). "[T]he buyer's agreement to buy from the seller and the seller's agreement to sell to the buyer cannot 'be the conspiracy to distribute, for it has no separate criminal object.'" *Id.* at 235 (quoting *United States v. Wexler*, 522 F.3d 194, 208 (2d Cir. 2008) (internal alterations omitted)). We have explained that, although the mere buyer defense "does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer," *id.* at 234, "[e]vidence that a buyer intends to resell the product instead of personally consuming it does not necessarily establish that the buyer has joined the seller's distribution conspiracy," *United States v.*

6

No. 14-239-cr

*Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008). Nor is "contact with drug traffickers," standing alone, sufficient "to prove participation in a conspiracy." *United States v. Gaviria*, 740 F.2d 174, 184 (1984). Although we have "avoided listing factors to guide what is a highly-specific fact inquiry into whether the circumstances surrounding a buyer-seller relationship establish an agreement to participate in a distribution conspiracy," we have identified certain factors relevant to the analysis, including "whether there was a prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sales on credit [], and the quantity of drugs involved." *Hawkins*, 547 F.3d at 74 (internal citations and quotation marks omitted).

Here, there is insufficient evidence of a shared conspiratorial purpose among Jackson, Brock and Dickerson. While Dickerson frequently bought crack from Brock, he also purchased crack from others not involved in the Jackson organization. Brock and Jackson never sold crack to Dickerson on credit, and placed no limitations on Dickerson's ability to use or resell the product he purchased. Brock testified that he did not consider Dickerson to be a member of the organization and did not know or care what Dickerson did with the drugs after he purchased them. There was no evidence that Dickerson shared profits with Brock or any other members of the organization, that Dickerson had interactions with Jackson or Brock other than the transactions that made him a customer, or that, apart from being a customer, he assisted their operation in any capacity.

This evidence is far weaker than the evidence in previous cases where we affirmed convictions despite a mere buyer defense. *See, e.g., United States v. Rojas*, 617 F.3d 669, 672, 675-76 (2d Cir. 2010) (the seller testified that he had a "longstanding" relationship with the buyer, provided the buyer with bail money because the buyer

No. 14-239-cr

"was moving product" for him, and sold drugs to the buyer on credit because he knew that the buyer would resell a portion of the drugs); *Parker*, 554 F.3d at 239 (unrebutted evidence that a buyer recruited his roommate to help the selling organization "handle one of the drug-order phone lines" while himself making deliveries for the selling group, and that another buyer purchased crack on credit and facilitated resales of crack in smaller quantities than the selling organization usually transacted in); *Hawkins*, 547 F.3d at 75 (testimony that the buyer "repeatedly brought potential customers' needs" to the seller's attention, and that he purchased drugs on credit with the understanding that he would resell the drugs and use the profits to repay the seller). In each of these cases, significant indicia of a conspiratorial purpose existed: the defendants purchased drugs in significant quantities on credit from the selling organization and took substantial other steps to assist it such as facilitating resales, supplying bail money and recruiting other customers and sellers.

The government, however, contends that our precedent permits juries to infer a conspiratorial agreement between the seller and the buyer on the basis of the volume and frequency of drug transactions. *See* Gov't Br. 41-46; *see also Parker*, 554 F.3d at 239 ("All three appellants purchased with such frequency and such quantity from the selling group to support a finding that each of them depended on it as a source of supply and thus had a stake in the group's success. . . . "); *Hawkins*, 547 F.3d at 77 ("In some cases, a large drug quantity may, in addition to establishing an intent to redistribute, support inferences about the relationship between the participants").

It is certainly true that the volume and frequency of transactions between Dickerson and the Jackson organization is

8

significant, and could have, under certain circumstances permitted an inference of conspiratorial intent. For example, in a footnote in *Parker*, we upheld a conspiracy conviction of a defendant without evidence that he "furnished . . . additional support to the selling group" because "his repeated purchases in wholesale quantities gave him a stake in the success" of the drug selling organization. 554 F.3d at 239 n.6. However, that individual is differently situated than Dickerson. The trial evidence in *Parker* established that this buyer, who never used crack cocaine and who resold *all* of the drugs that he purchased from multiple members of the selling organization, which therefore permitted the inference that he was closely aligned with the success of the enterprise. *See United States v. Parker, et. al.*, No. 05-cr-529, Transcript of Oral Argument on Rule 29 Motion, at 17 (N.D.N.Y. Dec. 8, 2006). In contrast, Dickerson had no connection to the Jackson enterprise, other than using Brock as one of the "various" suppliers of crack cocaine for both Dickerson's personal use and resale. Further there was evidence that the Jackson organization as a whole, and Brock specifically, sold to many different buyers. Brock's trial testimony established that Dickerson was one of his forty regular customers, that Brock had no interest in what Dickerson did with the drugs, and that he saw Dickerson only as a customer.

Viewing the evidence as a whole, we find the volume and frequency of *these* transactions to be insufficient to move the Brock-Dickerson relationship beyond that of buyer-seller because these circumstances do not create the inference of mutual dependency we identified in *Parker*. If, for example, Dickerson operated a food truck and purchased fifty loaves of bread at five different supermarkets, each of which sold bread to fifty different food truck operators on a daily basis, those purchases and his subsequent resales of the bread

9

No. 14-239-cr

would simply make him a good customer, not a member of any single supermarket enterprise. Although the volume of purchases is high, neither the food truck operator nor the supermarket is dependent on each other. By the same token, a good customer – even a very good customer – of a drug organization may still be just a customer, not a co-conspirator, if the evidence cannot support an inference of mutual dependency or a common stake.

"To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Rodriguez*, 392 F.3d 539, 544 (2d Cir. 2004). We conclude that the evidence of Dickerson's intent to join the charged conspiracy "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence." *Coplan*, 703 F.3d at 72 (internal quotation marks omitted). Under these circumstances, "a reasonable jury must necessarily entertain a reasonable doubt." *Id.* (quotation marks omitted).

## CONCLUSION

For these reasons, we **REVERSE** Dickerson's conviction for conspiracy to distribute and to possess with intent to distribute. Because Dickerson's 168 month sentence was driven largely by the drug weight charged in the conspiracy, we also **VACATE** Dickerson's sentence and **REMAND** for resentencing on the substantive distribution count alone.